A helpful dialogue. We'll move on to the next case this morning, which is also an arbitration case. O'Dell v. Aya, and I believe Mr. Hughes will be starting us off. The same drill as last time, when you come up, state your name for the record and then let us know how much time you want to reserve for rebuttal. People get a little confused sometimes. The clock is your whole amount of time, so if it says one minute, it's not in your opening. They may also be confused by the fact that Wednesday I just let things get out of control. I'm trying to behave myself better. Go ahead, Mr. Hughes. Good morning, Your Honor. Paul Hughes for the appellant, Aya Healthcare. I'd like to take five minutes for rebuttal, but we'll see how much time we have when I sit down. In applying non-mutual collateral estoppel for the first time to the question of whether an arbitration agreement is valid, an argument the district court advanced sua sponte, the court erred in three independent ways, and to be clear, I think there are three different ways the court can resolve this case in our favor. I'll list those, and I'd be happy to start anywhere that the court might prefer. The first is the delegation clause. We think this is an issue that should have been decided by the arbitrator in the first instance, and the easiest way to resolve this case is to say the delegation clause exists. This should get kicked to an arbitrator, and the more difficult question I'll talk about second is not something the court needs resolved. The second point, though, is there shouldn't be non-mutual collateral estoppel in the context of arbitration at all here. The first argument is California law applies for a very specific reason. They'll be happy to apply, and California has decided this question under Vandenberg, and if I'm wrong about that, the same result accrues under the FAA as a matter of federal law as well, and then the third point is setting all of that aside, there shouldn't be non-mutual collateral estoppel here at all because there were split decisions. There were four arbitration decisions. Two came out one way. Two came out the other. This is a very classic case where you don't apply non-mutual collateral estoppel just to pick two decisions that the court will apply to essentially delegate to the trash bin to that the court dispreferred. Counsel, can we discuss your first option that this dispute should be kicked to an arbitral body to decide? So you're saying that an arbitrator can then decide whether non-mutual offensive issue preclusion ought to apply and invalidate the contract. Absolutely, Your Honor, and Kieran in the Ninth Circuit has said that issues like res judicata objections are... But Kieran didn't involve non-mutual issue preclusion, right? It was just res judicata. There was mutuality there. Yes, Your Honor. I think that's an even better reason why this goes to the arbitrator here. And so it is, this is a broad delegation clause. So all issues that go to whether or not there is an enforceable arbitration provision as a whole, those are delegated to the arbitrators. Your first option though, counsel, sorry to interrupt, in conflict with your second potential independent basis, if the question is we kick it to the arbitrator, arbitrator can decide this issue. But your second proposal is potentially that the FAA prohibits the application of non-mutual issue preclusion. So the arbitrator, if the arbitrator were to decide that issue, it would exceed the arbitrator's power under the FAA. Well, it's true, Your Honor. I think the arbitrator has to come out to the right results. And if the arbitrator applying the FAA, arbitrators, of course, can apply federal law. If the arbitrator reaches the wrong result, could you have a claim to a court later that the arbitrator misapplied the law? It's a tough standard, but could that be argued? Yes. So, I mean, I do think the answer pursuant to my second argument is essentially preordained because I have confidence that I'm right about that. But we do think that fairly applied, that is a question for the arbitrator to decide in the first instance. And we think it's appropriate to put that question to the arbitrator. How would you, okay, that raises an interesting, because isn't the standard on the back end, you know, it's not just that the arbitrator got it wrong. It's not really even they got it really wrong. It's not that they got it hellishly wrong. It's that they completely ignored the law or something like that. And so I'm just wondering as a practical matter, if this goes to an arbitrator, where would you ever, if you're right on the second question, how would that ever get decided? That's a weird. Your Honor, I appreciate it's a tough standard, but what I want to be clear about is what we have agreed to do is arbitrate on an individual basis. And that means these kinds of questions we have no problem saying need to be arbitrated on an individual one-off basis. The problem with what the district court did here is the exact same thing the Supreme Court said in Stolten-Nielsen and Lamps Plus. You can't do is you take an individual arbitration case where everybody agrees to the informality, the expedient process, the less costly approach, but then have one agreement, then all of a sudden effectively have class-wide implications. That's the problem with what the district court did. And again, this is the analysis of the California Supreme Court in the Vandenberg case fully endorses that in this context. And I can talk about why we think it is that California law applies here to this issue of confirmation. But taking that back to the delegation question, this is our point, and I'm not going to run away from the fact that the natural upshot of that is this is to be decided on an individual basis because of the delegation clause puts this to the arbitrator. So we do think that is the first place. Now, if the court disagrees with me, I have no problem if the court turns to the second question and says we're right there. But I just think appropriately construing the agreement, this is first and foremost a question for the arbitrator. Can we reach the second question without deciding the first question? I think that's difficult, Your Honor. I think that my friends say that this is a question that is sort of outside the scope of what can be delegated. I think that's just wrong. So I think the court would decide delegation. My friends say that we've waived the delegation argument. I think that's just wrong because in our briefs below, we explicitly say the only question here is whether or not the delegation clause is enforceable. As we pointed out, the district court previously enforced this very delegation clause. That's why we had these four arbitration results because the court has already found the delegation clause enforceable. Was that a different district court judge? No. The current district court judge? Same district court judge. Yeah. Same judge, I believe, Your Honor, and had sent these out to arbitration, brought them back, confirmed three of the four awards, and now here we are on... And reversed ourselves. Yes, Your Honor. To tee off of Judge Tong's question, though, why would we need to reach the first issue if we looked at the offensive non-mutual collateral estoppel question as a matter of California substantive law, which I think is the same under federal law, which is the parties must agree in advance to the application of the doctrine. Look here to see that there was no such agreement. Therefore, that is unenforceable. We would have no quarrel with that at all, Your Honor. I think that would... So we wouldn't need to answer Judge Tong's question. We wouldn't need to reach the first issue as to who makes that determination if our conclusion as a matter of law is whether it's a court or an arbitrator who declares it. It's not a valid theory to apply. Certainly would welcome that, Your Honor. I think that is all correct and is an appropriate way that the court could resolve this. As I said, I think there are three independent roads that the court could enter to resolve this for my client. The third and final one is simply saying, this is a classic case where even if it's available, you want to apply. You're not really arguing they're independent in answer to Judge Tong's question because you're saying that we shouldn't reach the second one unless we disagree with you on the first one. Is that right? Well, Your Honor, I think the court does have some ability to order the questions as it sees fit. We certainly put them in the order that we saw, which was you start with the question of delegation. If it goes to an arbitrator, we're fine with it going to an arbitrator. But I think to Judge Tallman's question, if the court is prepared to decide it's just a matter of law, this is unavailable, it pre-permits the question and is an appropriate resolution. But I think the court can approach that in the order that it sees fit. Counsel, I want to raise a jurisdictional question with you. Shouldn't we, should we or should we not hold this case pending the Jules case before the Supreme Court now? In other words, whether the district court the first time around had jurisdiction at all to confirm the arbitral awards? Your Honor, I think there would be no problem holding this case for Jules because the court will have more guidance once the Jules decision comes down. I believe that'll be out by recess, so June. So that is there and I think that would... Do we need to reach that question or because it's a jurisdictional question, we have to address it? Or is this different because we're dealing with the effect of a prior judgment? Whether or not the district court lacked jurisdiction, if we find that non-mutual offensive issue preclusion doesn't apply, that's all right too. We can decide on that basis. I hate to call it a one-way ratchet, Your Honor, but I think I can sort of win here without the court having to decide that. But I don't think you can apply it non-mutual clarifensively if there was no jurisdiction for those at all. So I think Jules candidly can only help our position and if that's where the Supreme Court comes out, that would gut the basis for the application of collateral estoppel here. But all of my arguments prior to that, we would prevail irrespective of the result in Jules. Okay, just to clarify, you don't think this court, we would have an obligation to decide the jurisdictional question? No, Your Honor. I don't think you have an obligation to decide it. Our point is that there shouldn't be non-mutual collateral estoppel to arbitral awards that shouldn't have been confirmed in the first instance because there was a lack of subject matter jurisdiction to them. And further, because they are still part of this case, we think those are just interlocutory decisions that merge ultimately with the final judgment in those cases. So they will be ripe even once there is a later final judgment should that get there. But again, that is, in my view, very independent of the principal reasons we have that we've advanced as to why it is that we think that what the district court did here was an error. Counselor, can you address section 13 of the FAA? The text of it says that judgments confirming an award shall have, quote, the same force and effect in all respects as a judgment in an action. So judgments have potentially offensive non-mutual collateral estoppel effect. That's the Parkland-Hosiery case, Blondertongue. Those cases say that that kind of effect is available. So if we were to treat this judgment confirming the awards the same as we would treat any other judgment, why wouldn't offensive non-mutual issue preclusion apply? Just looking at the text of the FAA. Well, because I think you take the FAA with what was understood in 1925, both about non-mutual collateral preclusion, but also you look to what the analysis of the Vandenberg, if not binding on us, because we think this is California law, is still highly instructive, which is to say when you engage in arbitration, the assumption of the parties is that this is an individual on individual kind of approach. And the argument that your honor suggested would be an exact argument for why Stolten-Nielsen and Lamps Plus should have come out to the contrary way, that in the presence of silence that there could be class arbitration because that would be an available procedure. And what the Supreme Court said in Stolten-Nielsen and Lamps Plus is parties who engage in arbitration know that they are making a trade. They're making a trade for the efficiency and the ability for a claimant to get expeditious individualized relief much more cost-effectively and faster. But the trade-off is because of that informality, parties are not signing up for one arbitration to bind everyone down the road. And that's completely consistent with Park Lane Hosiery, I think it's footnote 14, where the railroad where you have all these cases that are coming out one way for the railroad and then all of a sudden a case comes out the other way and you can't say, you know, aha, we're going to attach non-mutual claim preclusion to that. That's the same kind of effect here just applied in the arbitration context. And so I think that the analysis that Vandenberg did admittedly under the California Arbitration Act in couple of Stolten-Nielsen and Lamps Plus shows why there's nothing inconsistent with Section 13's text to concluding that there is simply no non-mutual collateral estoppel that would be available in this context. Counsel, we're going to take five, but you want to... May I reserve my time? Thank you, Your Honor. Thank you. We'll hear from the appellees. Thank you, Counsel. May it please the Court, my name is Yasmin Zainalbai on behalf of plaintiffs' appellees. Could you pull... Yeah. Sorry. You have very soft voice. The question before this Court is whether the District Court properly utilized the tools available to it under the plain language of the FAA to preclude AYA from continuing to defend the enforceability of its arbitration agreement when that issue has been fully and fairly decided against it. Counsel, what do we do with the provision that says the parties have to agree in advance before they can be bound by that doctrine? There is no provision saying that. So that provision comes from Vandenberg, which is an interpretation strictly of the CAA, so the California Arbitration Act. And if you look... Why isn't that the same as any other limitation on the scope of the arbitration? The parties have to agree what it is that they're going to arbitrate and what the scope of the powers of the arbitrator will be. And as you point out, there's case law that says if they don't agree to it in advance, then they can't be bound by it. So to be clear, Vandenberg is only under the CAA, and it specifically exempts the FAA. It says we have no cause to consider... Isn't federal law to the same effect? No, I would disagree with that. So the plain language of the FAA says that a confirmed arbitration judgment shall have the same force and effect in all respects as a judgment and an action. This court in Hansen v. Musk described that as an express statutory command that a confirmed arbitration award be given the same preclusive effect as a judgment. Counsel, do you have any case invoking section 13 or otherwise that would accord offensive non-mutual issue preclusive effect to a confirmed arbitral award? Do you have any case? No. So I will... You have no case. No. So I will admit that this is a rare circumstance. I think the fact that it is rare does not make it unforeseeable under the plain language of the FAA, which clearly allows this result. But the reason I think that goes to show that AYA's interpretation that if non-mutual collateral offensive estoppel is allowed, sort of the floodgates will open and arbitration will be undermined, will not come to pass. Because in fact, the plain language of the FAA has allowed this non-mutual collateral estoppel effect to attach since 1979. Would an application of this doctrine effectively transform individualized proceedings into bellwether class actions? No, they would not. So AYA for that proposition relies on the line of cases like Stolt-Nielsen. And Stolt-Nielsen had a very different concern. So in that case, it was whether the arbitrator had jurisdiction to preside over a class-wide arbitration, absent the party's clear consent in their arbitration agreement. Here, there's no dispute that the arbitrations themselves were strictly bilateral. And the district court did not, the arbitrators did not purport to bind anyone other than the parties before them. Instead, it was the district court that afforded that effect. So your answer to the railroad derailment hypothetical is that when case number 26 is decided, finding liability by the railroad, then it can be applied offensively against the railroad in claims 27 through 50 or 100 or however many other unresolved claims there are arising out of the derailment? No, respectfully, that's not my answer because we're not in— But it has to be, doesn't it? No, because a non-mutual collateral estoppel test protects against that. So first, the parties had to have a full and fair opportunity, but then to litigate the issue in the prior action. But then further, there's a fairness element that's baked in. So the district court, as it did here, has to consider whether it would be fair. Do you agree that it's unfair to apply the ruling in case 26 to case 27 through 100? Perhaps in that case, but that's not the case we have here. Wouldn't the same be true here where we have multiple employee claims that have yet to be arbitrated? I don't understand the difference here. Well, we are applying collateral estoppel to the claims that have been arbitrated, not so we look— Counsel, but you're ignoring two other arbitral awards that went the other way, that found that the agreement was enforceable. So there were a total of four arbitral awards. Two of them found the agreement unenforceable. The other two found it enforceable. And what the district court did here was only credit the two arbitral awards that found the agreement unenforceable while disregarding the other ones. How is that fair? So collateral estoppel is focused on the quality of the process that led to an award. And that's exactly what the district court was concerned with when she reviewed the four different arbitration awards. Now, the district court, I've never seen a district judge do that. The district court actually looked down and examined what kind of briefing the arbitrator had called for. In essence, it was sort of de novo review of the arbitrator's decision. And we don't normally permit that when we're confirming arbitration awards. Well, first, the district court had gone through a comprehensive review of the record because the parties had cross-moved to confirm and vacate. Well, it looked to me like the district court initially sent these four cases to individual arbitrations, but then the district court didn't like two of the four, and it picked the two that it liked the best. And then it tried to justify its choice by looking at the procedures that the arbitrator followed and declared that the two the district court liked best were the ones that involved more comprehensive briefing and so on from the two that the district court didn't like. And if a district court can do that under the guise of enforcing an arbitration award, I think it turns the whole question of arbitration on its head. So first, I did want to respectfully correct the record on that. So it was a different district court judge within the same court. Oh, you're right. Yeah, Judge Benitez was the one, and then he retired, and then the new judge came in. Correct. Well, he recused himself. I'm not sure that that provides a legal justification for resolving the question. So the legal justification is, first, the grounds on which the district court compelled arbitration was different. So the parties initially challenged the arbitration agreement on fraudulent inducement grounds. And so what the district court found was that particular challenge, fraudulent inducement, did not specifically challenge the delegation clause. And so the parties had to go into arbitration. In arbitration, the four named plaintiffs raised two claims. So they initially raised fraudulent inducement, which they ended up not pursuing. But then they also raised a different challenge, so unconscionability. So the issue the district court initially compelled arbitration on was different than the one raised now. But it was also different than what the parties ended up litigating in arbitration. Do you think a district court has the authority to do that under the guise of applying normal defenses to enforcement of court judgments? I think the plain language of the FAA mandates that. I think everything that AYA is raising is policy judgments that count as to why the plain language shouldn't be enforced. But I think the Supreme- Even if the district court looks at the first two arbitrator awards and says, well, I just think the arbitrator was wrong. And we have case law that says the arbitrator can be wrong. But unless the arbitrator is egregiously wrong, and there's a gross miscarriage of justice here, federal courts are powerless to overturn the award and must confirm and convert them to judgments. Here, the district court was not acting on the basis of the outcome of the award. She was acting on the basis of the process. We talk about the process. Didn't the arbitrator in Bailey address the savings clause issue? And expressly uphold the arbitration agreements because there was a savings clause? So AYA did not raise that issue in its briefing. It did not defend its arbitration agreement based on the savings clause language. Didn't they argue that- Didn't they quote the savings clause in their brief in Bailey? So quoting the language of an arbitration provision is not the same as raising an argument based on it. And I think if you look at the record, you can see AYA points to SER 182 in the record for the proposition that it pointed to the savings clause language defense. But if you look, that's actually in the section discussion, discussing procedural unconscionability. If you look at SER 186, that's where AYA is discussing substantive unconscionability. And you can see that it underlines the language that it's relying on, and it does not underline the savings clause language. That's actually one of the few phrases that it does not highlight and underline. Because it was not relying on that language. The first time in the Bailey arbitration that AYA raised its savings clause defense is it inserted it into a proposed order. And then the district and then the arbitrator signed that proposed order wholesale with no changes. So I think we can all agree that inserting language into a proposed order is not the same as briefing it. You're saying they did make the argument, but in the procedural unconscionability context, they put it in a heading that should have been put in a different heading. No, I don't think they ever made the argument. I think naturally when you are defending your arbitration clause, you include it, you quote it, but you have to call out what your argument is based on. And they never did that. They just quoted it. And then when you look at the actual arguments they raised, none of them defend that provision based on the savings language. This is a belatedly raised argument. And in fact, the arbitrators noticed. That's why two arbitrators accepted supplemental briefing. The Zimmerman arbitrator, ER 137 note 3, said AYA changed its position. And then in fact, AYA knew it changed its position because it is the one that asked for the additional briefing. If you look at ER 158, the court, the Zimmerman order noted that in the course of the hearing, respondents sought additional briefing opportunity. So this was all a result. All the processes were a result of AYA's own process. It chose to belatedly raise an argument that had not been briefed before the court. The arbitrators really split on how they handled that. Well, I mean, let's say, I mean, I'm looking at SCR 182. They do discuss the cost provision. And this issue was also raised at oral argument before the arbitrator, was it not? So correct, because the arbitrators asked about it. Yes. So I'll put it this way. So for example, a district court reviewing this would look at that and say, OK, it was raised at oral argument. But a district court would never say, you know, there's no need for briefing. We can just decide this complicated issue based on oral argument before the court. But it wouldn't go the other way. You're saying the arbitrator should have, in order for it to get, its judgment to get issue preclusive effect, it needed to have ordered supplemental briefing on an issue that was raised in briefing and that he discussed at oral argument? It was not raised in briefing. That is our view. And I participated in every single one of those arbitrations. I remember the change that took place when AYA changed its argument, because I was on every single one of those. And the arbitrators noticed too, right? Two of them, Zimmerman and O'Dell, accepted supplemental briefing on that. It is fair for arbitrators to ask for process, right? It is an arbitration, is a dispute resolution tribunal. It is still, however, something that the federal courts are required, they are required to treat confirmed judgments as their own. And they are perfectly within their broad discretion in looking at the processes that were involved in these judgments that they confirmed. And deciding, in looking at these four judgments, that two of them followed, two of them afforded a full and fair adjudicatory process, and two did not. So a lot of the discussion we've been having with you has been on what I, the third issue sort of, that of did the district court err by applying non, whatever it's called, collateral stop-loss preclusion, non-mutual. Of course, there's that kind of another question of whether you can even do that to an arbitration agreement, right? And then, as I understood the briefing and counsel, at least at the beginning this morning, his view was you don't really reach the sort of, the important non-decided issue, as far as I can tell, in our, by any appellate court of whether or not you can, under the FAA, apply a non-mutual issue preclusion. You don't even reach that because you need to send these people straight to arbitration because of the delegation clause. Which maybe he's regretting that now because he's like, I feel like I got a friendly panel or something on the legal, on that secondary legal question. But on that first question, what is your position? I know you, in a perfect world, you would like to get non-issue, non-mutual issue preclusion from the federal court here and none of the, I guess none of the rest of these would need to go under the district court's rationale to arbitration. But if we just took them at what they said, said, nope, these have to go because of the delegation clause, wouldn't, in theory, you could argue to the arbitrator a non-issue, non-mutual issue preclusion and win. And then you heard what I said to your colleague on our side. I mean, that'd be really hard for them to overturn. And so you could just, I don't know, I guess, how arbitration works. And since I guess you'd have a whole bunch of different arbitrators, so you couldn't get the benefit of that. You might win some on that. You might lose others. What, why is that a terrible alternative for you to just, for us, if we throw them in the briar patch on the first issue and say, no, okay, we'll send these off. And then you can make these non-mutual issue preclusion arguments to the arbitrator. Right. So I think Aya's argument is that the district court should have enforced the delegation clause. Right. But our position is that Aya has skipped a key predicate step, which is, is there a valid agreement to invoke? And the Supreme Court has been clear that a court must consider that question before ordering compliance with a delegation clause. You can't delegate that question. You can't delegate that question, right? So the delegation, so for example, perhaps the delegation clause is sometimes referred to as question one, when you're faced with an arbitration agreement. I think there's a predicate question before you even reach that. Assuming that we determined that the district court erred by applying a non-mutual offensive collateral estoppel here, should we decide whether or not the delegation clause is enforceable or should we send it back to the district court? So that is kind of similar to the question I'm asking. I'm asking literally the opposite. Can we even get to that if we think that this should be sent back? Well, so clearly we think that this court should affirm the district court's order. If it remands. I understand what you want us to do, and I'm just asking you hypothetically. You may win, you may not win. If you reverse and remand for any reason, we think that the district, that this court needs to do so with the instructions to the district court to consider the unconscionability of the delegation clause. So you think that unconscionability infects not just the rest of the arbitration agreement, but also the delegation clause? When I initially moved to compel arbitration, we opposed. And in opposing, we launched a challenge to both the delegation clause. But if we disagreed with you on that narrow question, that the unconscionability reaches the delegation clause, then that kind of goes to my question. Why wouldn't we just say, okay, send it off to the, and we don't reach the non-mutual issue preclusion issue. That's for the arbitrator to decide. Well, we think that it is not for this court to reach that question, because the district court explicitly did not reach it yet. So the district court did not reach a ruling on the unconscionability of the delegation clause. But it is fully briefed here, right? And it's a question of law? It's not a question of law. So I respectfully disagree with that. There are 14 factual declarations in the record. I actually, in urging this court to reach that issue, didn't even bother to put those declarations in. So this is an issue that requires, it requires review of those declarations in the first instance that is clearly within the province of the district court. This is a court of review, not first instance. So that issue should be remanded to the district court. We clearly challenged delegation before the district court. That is, it is fully briefed, but the district court did not reach it because collateral estoppel was a predicate question. So this court, and then furthermore, I think we put in a 28J letter on this, a California. Now it already sent four of these, but you have new arguments. Like it sent four. No, so there is. One of those 28J letters is on the California, a California superior court faced with the exact same question has found AYA's arbitration agreement unenforceable in full, and it included a challenge. It found the delegation clause unenforceable and the arbitration agreement unenforceable in full. That has now. So you've got a superior court. Superior court, but that has been appealed. So AYA has already appealed that. So if this court should remand to the district court so that it can decide this fact-intensive issue in the first instance, but it can also do so with the benefit of a California appellate court's ruling on this issue of California state law. Why is it you say in the first instance, but I'm thinking in the fifth instance, right? Because it already sent four of these to arbitrate, but these unconscionably arguments weren't addressed in the first four. They just weren't raised or? Well, they were raised. So it was raised for those four named plaintiffs. Then what happened was that the stay on their claims was lifted and opt-in plaintiffs, these are different plaintiffs, joined the case because there's an FLSA claim. So 250 additional opt-in plaintiffs joined the case. But what makes these different than on the unconscionability of the delegation clause? What makes these different than the four that were already sent by the district court? Well, our arguments are primarily the same, except this time we've launched an express challenge to the delegation clause. And if the district court finds that the delegation clause is unenforceable, then it has the authority to address the arbitration agreement as a whole. But two of the arbitrators said it was proper and two said it wasn't. So that was for the four named plaintiffs. These are as to different plaintiffs. I am moved to confirm arbitration again. I just want to be clear as to what the arbitrators did. I mean, they decided the unconscionability issue, did they not? Two said yes, two said no. Correct. Well, they decided the agreement as a whole was unconscionable or not. Correct. And now this is framed differently. This is framed before the district court. And are there particular, you say it's very factual, but are there different facts for some of these opt-in plaintiffs that you think would influence the unconscionability analysis? I understand your argument that, generally speaking, that unconscionability arguments, procedural or substantive, can have a factual component, right? Right. You gave me three seconds to review this agreement before you made me sign it, right? That's a factual. But are you relying on different facts for these number five through whatever than the first ones or are they the same facts that you'd be making? No, they're very similar facts. So there are 14 different fact declarations that we put in to confirm sort of common sense propositions as to how a travel nurse would interpret a claim. And these were, these you put in for the original four or not? For the original four that the district court sent? No, so this is separate. This is a separate challenge. AYA moved to compel arbitration again of plaintiffs that it had not yet moved to compel arbitration of. So this is a separate motion to compel. AYA had never moved to compel these particular plaintiffs into arbitration. So it had to do so again because they were now parties to the action when they filed their opt-in. Because they opted in, right? Because they opted in. They're separate party plaintiffs. So now AYA has to defend against the 250. So AYA has to defend again. I'm just trying to figure out what's different about these five through whatever than one through four that were, that it's a different district court, right? Different district court judge, I guess. Is that right? Correct. But it's also an entirely different argument that the first, it's a different argument than the first. It's not a different argument that you all are making. So I'm just curious, why didn't you make that with regard to the first four? Why didn't we make that? Yeah. Well, we were focused on a different argument, which is fraudulent inducement. And when we got compelled into arbitration, because we did not sufficiently challenge the delegation clause as fraudulently induced, then we had to start to try to initiate these arbitrations. And then when we really started to interact with that agreement, there were provisions we thought were problematic. But when we actually had to work through this agreement and try to initiate arbitration, that's when we started to realize how problematic these clauses are. We said, you know, this is a really hard agreement to work under. We have to, we have no choice. And that's, and then when we started to research it, we said, this is unconscionable under California law. And we experienced that in trying to initiate arbitrations, the cost provisions, the mediation provisions. So that's, as we actually worked with that agreement, we identified this new argument and that's what we raised before the arbitrator. But that was not what we raised before the district court. And that is not the argument that is now before fraudulent inducement, that is off the table. Now we're not arguing that anymore. We have now raised a new argument to the district court. The district court has never considered, the arbitrators did. She confirmed their awards, but now because we've launched a direct challenge to the delegation clause, the court has to consider it in the first instance. If this court reverses on collateral estoppel, that is an outstanding challenge that is for the district court to decide.  Well, we've taken you way over, but it's been very helpful, actually. I think it's been very helpful. And we'll, I think we had a few minutes left. Counsel. But we did take, you, we did take her way over. So, but I'm going to be a meanie. At least I want you to think I'm going to be. Mr. Hughes, can you address my question with regard to what do we do with the enforceability of the delegation clause? I think this court can and should decide that because it's been briefed. I think it is all straightforward of a question that's before the court. It's been fully briefed by both sides. The features of this agreement are straightforward. I mean, it's a mutual agreement. It's broad. It's a short agreement. It's two pages. It has basic procedures prior to arbitration that this court has long endorsed as a delegation clause. But about their point, I guess the thing that sounds the most convincing is that, you know, aspects of unconscionability can be driven by fact, by disputed factual things. And so, to the extent, you know, that's one reason I have a district court decided in the first instance, as opposed to us, if there are unresolved, possible, disputed factual... She's talked about 14 affidavits, I guess. Well, two things about that, Your Honor. First, during that exchange, I didn't actually hear specific facts that are in dispute because we don't really think there are any. But the second point is, this is not about the agreement as a whole. This is about the delegation clause. And in Karamark v. Chickasaw Nation, this court was very clear in saying, when you're looking at the conscionability of a delegation clause, you're taking a much more narrow view than you would if you're looking at the whole provision. And why is that? Because lots of these cases turn on the question of, well, even if there are unconscionable provisions, which we don't think there are, there's another question of, do you sever? Do you modify the agreement? What happens? And the question is, who does that analysis? Is it the arbitrator or is it the court? And we think the answer to that is it's squarely the arbitrator. So that's why, as this court said, I think it's footnote 13 of Karamark, you look pretty narrowly in understanding the delegation clause because that ultimate, there's a discretionary piece as to severability analysis. That should be done by the arbitrator in the first instance. And so that's why I think when you're looking at the conscionability of the delegation clause, that doesn't have the same kind of, I don't think it really facts throughout this, but certainly not when you're looking at just the question of, can the delegation clause be enforced such that an arbitrator can then decide the conscionability parts down the road? Even on the severability question, could there be factual disputes surrounding that that permeate, where the conscionability would permeate the whole contract such that we don't apply the severability clause to sever the unconscionable provisions? I mean, there is a theoretic possibility, Your Honor, that that can exist. I don't think that is anything that would be in the context of this contract. Again, we're looking at a straightforward two-page contract. It's mutual in all respects. So let me, and I'm not aware of what these facts are, so I didn't really look at that. But the ones I've seen in other arbitration cases, you know, a lot of the argument, I got rushed to sign this thing. Well, that would, it would equally apply to the delegation clause as it would apply to the rest of the unconscionability argument. So just sitting here today, and I could be wrong, but it seems to me a lot of factual disputes would go to both, right? A lot of factual claims about this is unconscionable because of some factual thing would go to both? Well, so, Your Honor, first, I don't think we have that here. And second, I do think there's a distinction. So to the first point, you know, taking the rush point, this was an agreement that was emailed and it tells the- No, no, I'm not, I'm just saying, so what are the factual, I guess I'm asking you to make their argument for them, but what are the factual things that they're pointing out? I think it is this question of when it was emailed to them and the agreement says, have, if you wish, have your counsel review this before you sign it. This is not an on the site, you have to sign this now and then get on the job. This is a, if you want to have counsel look at this, you have time for counsel to look at that. That's the one issue. I think the other issue, in fairness to them, as I see on the procedural or the subsequent unconscionability is there's an agreement that the arbitration proceed in San Diego or another place, if the law requires. We think it's hard for them that this is procedurally unconscionable when they themselves decide to file a lawsuit in San Diego. There's pretty straightforward case law in this court that when a plaintiff chooses voluntarily to file a lawsuit in a particular jurisdiction. Yeah, so that second one, it seems to me, wouldn't really go to unconscionability of the delegation provision. So that actually, that is helpful because it's a factual thing that might go to the, it's unconscionable because it's too hard to make somebody travel to actually do the arbitration. And most arbitrations are via Zoom anyway. First one seems like it would be if you're making some argument about you tricked me into signing this thing, that would include being tricked into signing the delegation. I do think the materials are before the court, but this is where Caremark says, you don't do that full deep dive into things like cost splitting and all these sorts of questions or else you basically negate the impact of the delegation clause, the whole purpose of the delegation clause. And it played out here because as we've spent the morning talking about, there were four arbitrators and they came to different views as to the enforceability of the arbitration agreement as a whole. What you don't do is basically front load all of those conceivable questions into the delegation clause because it's appropriate for the arbitrators to decide that question and to make that view. Again, I'm not sure that makes a lot of sense to me. It's sort of like class actions. You can have heavy overlap on the class action factors with the merits, but you got to get the first question right. And I think the Supreme Court eventually explained that you can't just avoid those. And courts had the same concern. And so they were giving short shrift to issues that mattered for whether or not you grant the class action. And eventually, I think the Supreme Court clarified what makes sense to me, which is you got to get it right. You got to get the initial question right. Same thing would be true here too. If something's horribly unconscionable, but we just aren't going to really like look very hard at that, the delegation clause, because we don't want to step on the later arbitrator's toes on all the other stuff. I don't know. That doesn't seem right. Well, that goes to Judge Tong's question. I think I agree with you, which if something is horribly unconscionable that infects the whole agreement, if it's so sort of outside the pail, that is a circumstance where your sort of quick look on the delegation clause could find things that are outside that infect. But again, I hate to keep going back to Karamark, but what the court has said is you have to be cautious with that so as not to negate the effect of the delegation clause deciding the threshold questions of arbitrability in the first place. So that is the balance the court has to draw. And so there is, though, it's not a full look as to the whole of the agreement, but is there something that is so clearly unconscionable that you can't even enforce the delegation doctrine to allow the arbitrator to do the arbitrator's work for him or her to decide the question, including a severability or modification analysis that really should be the role of the arbitrator, not the role of the court. All right. So we've taken you way over, not as long as we took her over, but there's some really challenging issues here. And I found argument very helpful, but I want to make sure that there's any other issues my colleagues want to ask you about. Otherwise, I'm going to make you sit down and only have me take five minutes over. Thank you. All right. Thank you to both sides. This is very helpful. Thank you all.
judges: TALLMAN, VANDYKE, TUNG